IN THE UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

RICHMOND DIVISION

IN RE:

MONROE R. PARKER, JR.           CASE NO.:10-36592-KRH

    DEBTOR.

MONROE R. PARKER, JR.,

    PLAINTIFF,

V.                                 ADVERSARY PROCEEDING NO.10-3186

BAPTIST THEOLOGICAL SEMINARY

AT RICHMOND, et al.,

    DEFENDANTS.

**MOTION TO VACATE OR AMEND THIS COURT'S**

**ORDER SIGNED BY JUDGE KEVIN R. HUENNEKENS.**

Comes now the plaintiff, Monroe R. Parker, Jr., and shows that the Court dismissed the adversary proceeding captioned above, due to deceit, fraud, and perjury by attorneys Richard K. Bennett, K. Elizabeth Sieg, Lori M. Scott, and declarant James F. Peak, Jr., and the Court did so without jurisdiction , and plaintiff further states as follows:

## JURISDICTION AND PARTIES

1. Attorney Bennett should be sanctioned by this Court for soliciting false affidavits from James Peak in the seminary catalog, it declares that student housing is a place of public accommodation. This disputed fact has to be decided by a jury. There is more than enough evidence that the plaintiff was discriminated against, including actions by the Court and defense counsel. Exhibit # 4&5.

2. The defendants allege that this court does not have jurisdiction based on the allegations of this Complaint; however, plaintiff demanded a jury trial in state and federal court. Only a jury can decide whether his complaint has merit.

3. Peak alone alleged that the Seminary does not receive federal financial assistance. Ida Mae Hays is the registrar and director of financial aid, not James F. Peak, Jr.; yet, Peak was allowed to give perjured testimony in Court, and Bennett, Sieg and Scott solicited bogus affidavits from Peak full of material falsehoods. The seminary receives federal financial assistance via EFT. The seminary does not apply financial aid equally. But see their policy on page 40; " BTSR's desire is that no student financial need serve as a barrier to seminary education. Exhibit # 1., and 10.

2

4. The seminary is an educational institution as defined by 42 U.S.C.§2000. Title VI and Title VII, as well as, 42 U.S.C.§ 1981 and 42 U.S.C.§2000, prohibits discrimination in educational institutions, as well as, all laws and statutes that prohibit housing discrimination. Exhibit # 1.

5. Tiffany Pittman misled the committee (admissions) about plaintiff's GPA, which did not include James F. Peak, Jr. Peak cannot testify with personal knowledge, only about what he heard. Exhibit #9.

6. Bennett and Scott used Peak, and attempted to obstruct truthful testimony by coaching Peak to perjure himself, while Bennett boast above what he can get the judges to do for him.

7. Three social agencies offered to pay the rent, the deposit and other fees, but the school through Peak refused to accept it. Witnesses will testify that Peak told Hays not to register plaintiff during registration. Hays admitted to plaintiff and his wife that Peak told her not to register him for classes. Peak cannot testify to what Ida Mae Hays told Monroe R. Parker, Jr., and Tonia R. Parker. Exhibit(s) 4 & 5.

8. Peak fail to tell the Court or his attorney that all white students who were admitted with plaintiff received a full financial aid package, but plaintiff was denied his financial

aid package, so his rent could not be paid, nor his tuition or deposits taken care of. Plaintiff even got approved for student loans, but was denied all of his aid (federal) by Hays. Peak could not testify about this. Remember he gave erroneous, false and misleading sworn statements to the court during the hearing regarding the automatic stay, both adversary hearings and during the pre-trial conferences, when he falsely alleged that the school receives no financial assistance, despite the United States Department Of Education /Office For Civil Rights officials declaration that BTSR(Baptist Theological Seminary At Richmond are recipients of federal financial assistance. This Court ignored the report from OCR, where they agreed to investigate the following violations by BTSR:

"Specifically, you allege that the Seminary treated you differently than Asian and White students when it denied your request for financial assistance and when it subjected you to an an earlier deadline for submitting your tuition payment". Exhibit # 1.

"OCR is responsible for enforcing certain federal civil rights statutes and regulations, including Title VI of the Civil Rights Act of 1964 (Title VI), 42 U.S.C.§ 2000d, and its implementing regulation, at 34 C.F.R. Part 100, which prohibit discrimination on the bases of race, color or national orgin in activities or

4

programs that receive federal financial assistance. The Seminary receives federal financial assistance from the Department and therefore, is subject to the provisions of Title VI". Exhibit # 1.

9. Peak, Scott and Bennett told the seminary students that Monroe R. Parker, Jr. was an ex-felon with a violent background, and not to associate with him, under any circumstances. This Court allowed them to place those allegations in a Motion, and only struck them from Peak's affidavit, rather than allow plaintiff to cross-examine Peak, nor to attack or impeach Peak's weak credibility. Plaintiff shows these actions denied plaintiff a full and fair trial. Exhibit # 3, page 3(paragraph 2).

10. Plaintiff shows that the alleged bad checks, do not insulate the discrimination by Peak and others. See 42 U.S.C. §2000 d, "100.3 Discrimination prohibited, (v) Treat an individual differently from others in determining whether he satisfies any admission, enrollment, quota, eligibility, membership or other requirement or condition which individuals must meet in order to be provided any service, financial aid, or other benefit provider under the program".

11. Plaintiff shows that this is a non-core proceeding and plaintiff never consented to entry of final orders or judgments

by the bankruptcy Court. Plaintiff incorporate their Brief in Support of the Motion to Vacate herein.

12. This Court never possessed jurisdiction over this civil proceeding No.:10-3186, a civil case removed from state court to bankruptcy court. Had plaintiff removed this case, it would have been remanded. However, the Honorable Judge Huennekens chose to look the other way, when Bennett and Scott joined in the removal, in violation of the United States Constitution.

13. Plaintiff shows that this case should have been transferred to the United States District Court, but this Court wanted to oblige Bennett's ex parte request to quash before a jury could be empanelled. This inquiry is to analyze whether the court did any fact-finding or just went along with perjury and material falsehoods by Bennett and others. I believe the court looked at the plaintiff's purported criminal record, proffered by defense counsel, without legal justification. Further, the Court used this bogus evidence to lift the automatic stay(the false statements alleging that plaintiff posed a risk of harm to other students). This violation of the Federal Rules Of Evidence, was more prejudicial than probative. Therefore, Plaintiff was denied a full and fair trial. The summary judgment granted by this Court, was in violation of the United States Constitution.

6

## **ANALYSIS**

I. **This is a Non-Core Proceeding**

A bankruptcy judge is to determine, sua sponte or on motion of a party, whether a matter is a core proceeding. Bankruptcy judges may hear and determine core proceedings. A Bankruptcy judge may hear and determine core proceedings. A bankruptcy judge may also hear a non-core, related proceeding, but in such a proceeding:

The bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district court after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

A district court may refer a non-core, related proceeding to the bankruptcy judge for determination only with the consent of all parties to the proceeding. Further, *regardless of whether a matter is core or non-core,* a bankruptcy court may not conduct a jury trial in a proceeding unless "it has been specifically designated to exercise such jurisdiction" and all parties to the

proceeding have expressly consented to the bankruptcy court's jurisdiction.

## THE EASTERN DISTRICT OF VIRGINIA FAILED TO DO ANY FACT-FINDING, AS TO WHETHER THIS ADVERSARY PROCEEDING WAS CORE OR NON-CORE

Under 28 U.S.C. §157(d), a district court has authority to withdraw the reference to the Bankruptcy court "on timely motion of any party, for cause shown". This motion is timely because it challenges jurisdiction, and a court must always have jurisdiction over a case in order to proceed.[1] Plaintiff looks to the Third Circuit's test in Pacor v. Higgins, 743 F. 2d 984 (3d Cir. 1984); along with the 11th circuit added a "general principle" to this test: "If the resolution of litigation cannot affect the administration of the estate , the bankruptcy court does not have jurisdiction to decide it". In re Gallucci, 931 F. 2d 738, 742(11th Cir. 1991).

## NON-CORE PROCEEDINGS

A non core proceeding has a "life of its own in either state or federal common law or statute independent of the federal bankruptcy laws". Salomon v. Kaiser (In re Kaiser),

---

[1] The lack of subject matter jurisdiction may be raised at anytime during pendency of the case, " even initially at the highest appellate level". Kontrick v. Ryan, 540 U.S. 443, 455 (2004); RED. R. CIV. P. 12(h)(3).

8

722 F. 2d 1574, 1582(2d Cir. 1983); Wechsler v. Squadron, Ellenoff, Pleasant&Sheinfeld L.L.P., 201 B.R. 635 (S.D.N.Y. 1996) (Non-core matters are those in which the district court is more proficient than the Bankruptcy); non-core proceedings where the action "would survive outside of bankruptcy", includes causes of action by the debtor against a third-party based on non-bankruptcy law.

## CONCLUSION

This court rendered decisions and an unconstitutional summary judgment, when subject matter jurisdiction was not present, and all acts of this Court, in case No.: 10-3186, was void at inception. Additionally, defense counsel solicited material falsehoods from defendant Peak, who testified and gave bogus affidavits, intentionally misleading the Court, in concert with attorneys Bennett, Sieg and Scott. See Peak's declaration in Case No.: 10-3155, including Exhibit 1 and 2, which supported the Motion For Summary Judgment.

Peak's declaration, paragraph # 5, "including the fax that Mr. Parker alleges that he sent to my office". The truth is plaintiff's fax number is 804-303-9772. The failed faxes on Exhibit # 2, are as follows:

804-751-0117, 419-420-1830, 804-783-9886, 804-737-9110. The plaintiff sent a total of four faxes, including one to the

9

registered agent. Plaintiff also overnighted a copy to Peak, signed by Kathy Garner, and Plaintiff delivered a copy of the Chapter 13 petition, by hand on 9-23-2010. Contrary to Peak's naked assertions, the emails continued to come demanding payment, by Peak and others.

Paragraph # 8, contained another erroneous and materially false declaration, "in July of 2010, he was given a form lease, but never signed it nor returned it to the office". Plaintiff was never given a form lease. We know James Peak never gave Monroe or Tonia Parker a form lease. The Associate Dean Ka'thy Gore CHAPPELLE, was the school official in charge of housing, at the time, the Parkers submitted their housing application, Donna Rhaney assumed those duties subsequently, not James Peak.

Neither Motion Requesting Summary Judgment contained the required **ROSEBORO NOTICE**, as required by local rule 7(K), and there exists no independent judicial fact-finding by this Court. This court did not establish subject matter jurisdiction as law and statutes require, by entering his decisions. Plaintiff was not given the requisite number of days to respond to the Motion for Summary Judgment, before he entered the decision for the defendants.

Plaintiff was denied financial aid so he could not pay his rent or tuition. Plaintiff was denied the opportunity to

**10**

work off the $5000 of work-study, awarded him by the university[UNION INSTITUTE&UNIVERSITY/ALLOWED ME TO USE THAT AWARD AT BTSR], but, Peak told Hays to deny that option to Plaintiff, while allowing Whites to earn work-study income.

**Ida Mae Hays** told plaintiff and his wife that all aid was given out before May, 2010. **Dean Israel Galindo** told us that no aid would be given out until registration, and sent us back to Ida Mae Hays. Ida Mae Hays, informs us that Plaintiff will receive no more than $500, because she had given the rest out, already. The school earlier promised plaintiff enough financial aid, to pay rent and tuition. Minority students receive no aid, other than loans from BTSR. Also, **Ms. Tiffany Pittman** waives the commitment fee deposit for Whites only, not for Blacks.

James Peak alleged in an earlier declaration that plaintiff concealed his criminal background. Peak inferred that upon information and belief that, plaintiff's purported criminal background (alleged arrests) posed a substantial undue risk of harm to the other registered seminary students, in violation of plaintiff's civil rights. Peak also falsely declared that plaintiff had been belligerent and intimidating in his interactions with the BTSR staff and students. This Court lifted the automatic stay, based upon

11

triple hearsay and materially false declarations by James Peak, who lacked personal knowledge. Peak also erroneously alleged that plaintiff was evicted from the **UNION-PSCE THEOLOGICAL SEMINARY**. The court required no proof or evidence from the defendants to substantial these naked allegations, in violation of the United States Constitution. The court lifted the automatic stay based upon this evidence, and granted summary judgment w/o subject-matter jurisdiction.

Further, the Court ruled that plaintiff was not a student, and the plaintiff did not have a lease in violation of state and federal law. In this Court's order, no fact-finding was written only an order granting the defendant's request. No **Roseboro Notice**, and without it, no summary judgment can be granted, where a pro se litigant is involved.

This is a **non-core proceeding**, where the state lawsuit was removed from state court, suing for money damages, injunctive &declarative relief for Education and Public Accommodation Discrimination, only a article III judge has original jurisdiction. The defendants were in default at the time of their answer, having failed to answer by October 28, 2010, three days after they removed this case.

This court made a decision based upon an incorrect interpretation of Section 365[c] of the United States Bankruptcy Code. Section 365 [c], which prohibits assumption of a terminated lease, applies only to leases of nonresidential real property. There is no comparable prohibition of the assumption of a terminated lease of residential real property. In Inre Stoltz, n.39 the Second Circuit held that a chapter 13 debtor could assume an unexpired lease. The Court looked to state law to determine the debtor's interests in her month-to-month tenancy. The landlord had terminated her lease, a judgment for possession was entered but the writ of possession had not been issued. The court held that under applicable state law, a tenant-debtor with a possessory interest in leased residential property has an unexpired lease that may be assumed. <u>Meiburger   v.  Endeka Enters., L.L.C. (in re Tsiaoushis), 383 B.R.   616 (Bankr. E.D. Va. 2007), and In re Garrison-Asburn, L.C., 253 B.R. 700 (Bankr. E.D. Va. 2000)</u>.

This court may determine that the lease terminated before the petition was filed, and reasoned that bankruptcy could not have reinstated the lease. However, this circuit have consistently reasoned that "where the former lease has been terminated prepetition and the tenant filing bankruptcy

13

retains possession of the premises under a tenancy at will or at sufferance, the debtor's possessory right is subject to the automatic stay of 11 U.S.C. §362(a)(1), (2), and (3). This Court attempted to use Judge Tice's ruling in Nasir. It fails for several reasons:

A. The City of Richmond has never gave defendants a judgment, possession or ordered an eviction.

B. Plaintiff's lease did not terminate by law or by a state court ruling.

C. Nasir involved a nonresidential lease and does not apply here.

Wherefore for the foregoing reasons, plaintiff request a court order vacating the summary judgment in 10-3186, a **NON-CORE PROCEEDING**, transfer this case to U.S. District Court, to be assigned to an Article III judge. That this court consider sanctions against defense counsel and declarant James F. Peak, Jr., intentional false statements under oath, to avoid liability, in violation of the plaintiff's Civil Rights. This action comes before this court pursuant to Rule 60[b] of FRCP and section 525 of the Bankruptcy Code. That this motion is timely, and plaintiff received this notice of the summary dismissal on the 13th, and he had ten days, plus three days for

14

mailing to appeal or file a Motion to Vacate or to Amend by local rule.

*Monroe R. Parker, Jr.*

Monroe R. Parker, Jr.

1207 Palmyra Avenue, 1A

Richmond, Virginia 23227

804-303-9771

804-303-9772(FAX)

**CERTIFICATE OF SERVICE**

**I have served this Motion to Vacate upon all opposing counsel as follows:**

Richard K. Bennett

Harman, Claytor, Corrigan & Wellman

P.O. Box 70280

Richmond, Virginia 23255


K. Elizabeth Sieg

Lori M. Scott

McGuire Woods LLP

One James Center

901 East Cary Street

Richmond, Virginia 23219

*Monroe R. Parker, Jr.*

**MONROE R. PARKER, JR.**

15